UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICAELA STRICKLAND, | ) | CASE NO. 1:18-CV-1664 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | UNITED STATES MAGISTRATE |
| v. | ) | JUDGE GEORGE J. LIMBERT |
| | ) | |
| ANDREW M. SAUL[1], | ) | |
| COMMISSIONER OF SOCIAL | ) | MEMORANDUM OPINION & |
| SECURITY ADMINISTRATION, | ) | ORDER |
| | ) | |
| Defendant. | ) | |

Micaela Strickland ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. In her brief on the merits, Plaintiff asserts that the administrative law judge ("ALJ") committed error that directly prejudiced Plaintiff because the ALJ failed to: (1) properly weigh the opinions of her treating case worker, which was co-signed by her treating physician, and the opinion of a psychiatrist; and (2) include additional limitations in his Residual Functional Capacity ("RFC") determination. ECF Dkt. #15. For the following reasons, the Court AFFIRMS the decision of the ALJ and DISMISSES Plaintiff's case in its entirety WITH PREJUDICE.

## I.    FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on June 26, 2015, alleging disability beginning November 1, 2014 due to Post-Traumatic Stress Disorder ("PTSD"), depression, anxiety, insomnia, migraines, and back injury. ECF Dkt. #10 ("Tr.") at 67, 79, 93-94, 106-

---

[1]On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security, replacing acting Commissioner Nancy A. Berryhill.

07, 200.[2] The Social Security Administration ("SSA") denied her applications at the initial level and upon reconsideration. *Id.* at 77, 89, 104, 117, 136, 143. Plaintiff requested a hearing before an ALJ, and the ALJ held a hearing on October 13, 2017, where Plaintiff was represented by counsel and testified. *Id*. at 29, 154, 155-59, 163. A vocational expert ("VE") also testified. *Id.* at 29-30.

On January 31, 2018, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI. Tr. at 9-23. Plaintiff requested that the Appeals Council review the ALJ's decision, and the Appeals Council denied her request for review on June 7, 2018. *Id*. at 1-6, 194-95.

On July 19, 2018, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. She filed a merits brief on January 16, 2019 and Defendant filed a merits brief on April 12, 2019. ECF Dkt. #15; ECF Dkt. #18. The parties consented to the authority of the Magistrate Judge. ECF Dkt. #12.

## II.     RELEVANT PORTIONS OF ALJ'S DECISION

On January 31, 2018, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. at 9-23. The ALJ found that Plaintiff met the insured status requirements of the Social Security Act ("Act") through December 31, 2019. *Id.* at 14. He further found that Plaintiff had not engaged in substantial gainful activity since November 1, 2014, the alleged onset date. *Id.* Continuing, the ALJ determined that Plaintiff had the severe impairments of bipolar disorder, depression, anxiety, panic disorder, PTSD, and migraines. *Id*. He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Subpart P, Appendix 1. *Id.* at 15. After considering the record, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels, but with the following limitations:

---

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than when the Transcript was compiled. This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

can never climb ladders, ropes, or scaffolds; can never be exposed to unprotected heights, moving mechanical parts, or operate a motor vehicle; limited to working in (up to and including) a loud noise environment; limited to performing simple, routine, and repetitive tasks, but not at a production rate pace (i.e. assembly line work); limited to simple work-related decisions in using her judgment and dealing with changes in the work setting; capable of frequent interaction with supervisors and occasional interaction with coworkers and the public. *Id.* at 16.

The ALJ then stated that Plaintiff had no past relevant work, was a younger individual on the alleged disability onset date, had at least a high school education, and could communicate in English. Tr. at 21. Next, the ALJ indicated that the transferability of jobs skill was not an issue because Plaintiff had no past relevant work. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* For these reasons, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from November 1, 2014 through the date of his decision. *Id.* at 22.

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to Social Security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.     If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.     If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.     STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules

and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 937 (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009)) (internal citations omitted). Therefore, even if an ALJ's decision is supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.     LAW AND ANALYSIS

### A.     OPINION EVIDENCE

Plaintiff first asserts that the ALJ erred in affording only little weight to the opinion of licensed social worker ("LSW") Jonathan Leigh, whose medical source statement was co-signed by Dr. Sara Nagle-Yang, M.D., as well as the opinion of Dr. John Demott, D.O. ECF Dkt. #15 at 11-16. Specifically, Plaintiff reasons that (1) the treating physician rule applies to these opinions; (2) the ALJ did not provide "good reasons" for rejecting the opinions because (a) the opinions were well supported and consistent with other evidence in the record and (b) the ALJ erred in concluding Plaintiff only had conservative treatment and that this did not support rejecting these opinions; and (3) the opinions of the State agency providers were not consistent with the record and failed to account for subsequent, additional evidence. *Id.* For the following reasons, the Court finds that the ALJ did not err in affording "little weight" to these opinions and substantial evidence supports that determination.

A treating source[3] is a claimant's own acceptable medical source who provides, or has provided, medical treatment or evaluations and who has, or has had, an ongoing treatment relationship with that claimant. *See* 20 C.F.R. § 404.1527(a)(2) (defining "treating

---

[3] The undersigned notes that the SSA has changed the treating physician rule effective March 27, 2017. The SSA will no longer give any specific evidentiary weight to medical opinions, including affording controlling weight to medical opinions. Rather, the SSA will consider the persuasiveness of medical opinions using the factors specified in their rules  and will consider the supportability and consistency factors as the most important factors.

source"). An ALJ must give controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2)[4]; *Price v. Comm'r Soc. Sec. Admin.*, 342 Fed.Appx. 172, 175-76 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

If an ALJ declines to give controlling weight to the opinion of a treating source, he must determine the weight to give that opinion based upon a number of regulatory factors. 20 C.F.R. § 404.1527(c)(2). Such factors include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson*, 378 F.3d at 544, citing 20 C.F.R. § 404.1527(c); *see also* 20 C.F.R. §416.927(c). Although an ALJ must "consider" all of the factors in 20 C.F.R. § 404.1527(c) and must "apply" the factors listed in 20 C.F.R. § 404.1527(c)(2), including its subsections, through (c)(6) to determine the weight to give that opinion, he is not required to discuss every factor in his decision as long as he provides "good reasons." 20 C.F.R. § 404.1527(c)(2); Social Security Rule ("SSR") 96-2p, 1996 WL 374188, at *5 (1996)[5]; *Francis v. Comm'r Soc. Sec. Admin.*, 414 Fed.Appx. 802, 804 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons ... for the weight ... give[n] [to the] treating source's opinion'—not an exhaustive factor-by-factor analysis.") (internal citation omitted). Under the "good reasons" rule, the ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

---

[4] 20 C.F.R. § 416.927 governs SSI determinations, while 20 C.F.R. § 404.1527 governs DIB determinations. These regulations are virtually identical, and, for convenience, the Court will only cite to the DIB regulations.

[5] Effective March 27, 2017, SSR 06-03p, 96-2p, and 96-5p have been rescinded by Fed. Reg. Notice Vol. 82, No. 57, page 15263. These regulations are still effective for claims filed before March 27, 2017.

SSR 96-2p, at *5. This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore "be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson,* 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. 2010). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

Plaintiff contends that the treating source rule applies to the opinions of Mr. Leigh, Dr. Nagle-Yang, and Dr. Demott. ECF Dkt. #15 at 11-13. Although Defendant concedes that

"the ALJ considered that Mr. Leigh and Drs. Nagle-Yang and DeMott were treating mental health specialists," the Court questions whether this is true. ECF Dkt. #18 at 16, 17 (citing tr. at18, 20; 20 C.F.R. § 404.1527(c)(2) & (5)). In his decision, the ALJ does not expressly state which, if any, sources he considered to be treating sources. *See* tr. at 9-23. The ALJ discussed all of the three aforementioned sources together, apparently because they completed the only medical source statements in the record. *See id.* at 19-20, 35. The only mention of treatment in the decision is the ALJ's following statement: "While Mr. Leigh and Dr. DeMott have treated the claimant, their opinions are not supported by the claimant's more recent medical records, which demonstrate progress." *Id.* at 20 (citing tr. at 598-639, 673-718).

The treating physician rule does not apply to nonacceptable medical sources. *See* 20 C.F.R. § 404.1527(a)(2), (c)(2) & (f). A licensed social worker is not an acceptable medical source and consequently is not entitled to the protections of the treating physician rule. *See* 20 C.F.R. § 404.1513; (Effective Sept. 3, 2013); SSR 06-03p, 2006 WL 2329939, at *3; *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) (citing 20 C.F.R. § 404.1513(a) & (d)(1)) (finding treating counselor is not an "acceptable medical source," but rather is an "other source."). On November 18, 2014, Plaintiff began mental health treatment at the Ohio Guidestone Center ("Guidestone"), where Mr. Leigh is employed as a LSW and case worker and Dr. Nagle-Yang is employed as a psychiatrist. Tr. at 289, 309, 715. The record shows that Plaintiff visited with Mr. Leigh on one occasion, recorded in 3 different records, dated July 29 and 30 of 2015 and February 3, 2016. *Id.* at 297-99, 307-09, 641-43. Mr. Leigh completed a medical source statement on June 12, 2016, and, on June 23, 2017, he discharged Plaintiff after she did not respond to outreach attempts and did not return for services. *Id.* at 538-39, 695-96, 716-18. Given his status as a LSW, the treating physician rule does not apply to Mr. Leigh's June 12, 2016 opinion. Tr. at 538-39.

The Sixth Circuit has held that a single examination does not suffice to afford treating physician status. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 506 (6th Cir. 2006) (also noting that "depending on the circumstances and the nature of the alleged

condition, two or three visits often will not suffice for an ongoing treatment relationship.") (citing *Cunningham v. Shalala*, 880 F.Supp. 537, 551 (N.D.Ill.1995) (where physician saw claimant five times in two years, it was "hardly a foregone conclusion" that his opinion should be afforded great weight)); *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (finding treating physician rule did not apply to clinical psychologist who examined claimant only once, was paid by SSA to examine claimant, and administered no treatment); *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 572 (6th Cir. 1989) ("Dr. Zupnick is not a treating physician given the fact that he evaluated the claimant on only one occasion.").

The medical records only convey two instances where Dr. DeMott is involved. On August 8, 2017, Dr. DeMott completed a medical source statement. Tr at 649-50. However, the only instance in the record of Plaintiff visiting with Dr. DeMott was *after* he completed the statement, on August 30, 2017. *Id.* at 679-86. Hearing testimony suggests that Plaintiff had subsequently seen Dr. DeMott once or twice per month, but it nevertheless still appears to be after his medical source statement was completed. *See* tr. at 56, 65. Without more, such a treatment relationship at the time of Dr. DeMott's opinion does not entitle it to any protections of the treating physician rule.

Furthermore, District Courts within this Circuit have treated opinions co-signed by a physician as opinions of that physician. *See Brown v. Comm'r of Soc. Sec.*, No. 5:14CV940, 2015 WL 4275556, at *11-12 (N.D. Ohio July 14, 2015) ("Although the issue has yet to be addressed by the Sixth Circuit, prior decisions have held that a doctor's co-signature indicates at a minimum that the doctor agrees with the other sources opinion ...[i]t follows then, that if the signing physician or psychologist has personally examined the claimant, the opinion must be treated as the doctor's own."); *Pater v. Comm'r of Soc. Sec.*, No. 1:15CV1295, at *7 (N.D. Ohio June 27, 2016) ("Under the law, there is no difference between opinions filled out and signed by a treating psychiatrist and opinions filled out by a social worker and then signed—thus adopted—by a treating psychiatrist.") (internal quotations omitted); *Rueda v. Berryhill*, No. 1:17CV1878, 2018 WL 3304626 (N.D. Ohio June 22, 2018), *report and recommendation adopted sub nom. Rueda v. Comm'r of Soc.*

*Sec.*, No. 1:17CV1878, 2018 WL 3302928 (N.D. Ohio July 5, 2018). *Brown* presents remarkably similar facts in that a psychologist who examined the plaintiff once subsequently co-signed a mental medical source statement prepared and signed by a licensed professional counselor. *Brown*, 2015 WL 4275556, at *5, 10-12. The court found that because the psychologist examined plaintiff and co-signed the opinion, the psychologist essentially adopted that opinion and it was to be treated as the doctor's own opinion. *See id.* at *11-12. However, since the psychologist only examined the plaintiff once, the court found that she was not a treating source and the treating physician rule did not apply. *Id.* at *12. In the instant case, Plaintiff visited with Dr. Sara Nagle-Yang on two known occasions: October 26, 2015 and August 8, 2016. Tr. at 704-15. In between these visits, on July 18, 2016, Dr. Nagle-Yang co-signed Mr. Leigh's medical source statement. *Id.* at 539. The medical source statement is considered Dr. Nagle-Yang's own opinion that she adopted, but she only examined Plaintiff once by the time she adopted the opinion as her own. Thus, she also is not entitled to treating physician status.

Since the treating physician rule does not apply to any of the opinions of Mr. Leigh, Dr. DeMott, or Dr. Nagle-Yang, the "good reasons" rule is inapplicable and Plaintiff's second contention is without merit. The regulations require an ALJ to "consider" all the medical opinions in the record as well as "evaluate" them considering the factors of § 404.1527(c). 20 C.F.R. § 404.1527(b) & (c). Drs. DeMott and Nagle-Yang are "acceptable medical sources," who receive special deference. *See* 20 C.F.R. § 404.1513(a), (a)(1) & (2) ("We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s)"). Mr. Leigh, a social worker, is considered an "other source," who is not entitled to the "good reasons" requirement of the treating physician rule. 20 C.F.R. § 404.1513(d)(effective Sept. 3, 2013); *e.g., Ogletree v. Colvin*, No. 1:16CV0031, 2016 WL 6538010, at *20 n. 14 (N.D. Ohio Oct. 6, 2016), *report and recommendation adopted sub nom. Ogletree v. Comm'r of Soc. Sec.*, No. 1:16CV31, 2016 WL 6522504 (N.D. Ohio Nov. 3, 2016) ("[S]ocial workers and mental health counselors are 'other sources' pursuant to 20 C.F.R. § § 404.1513(d) and 416.913(d), which are not subject to the 'good

reasons' requirement of the treating physician rule."); *Johnson v. Comm'r of Soc. Sec.*, No. 1:17CV847, 2018 WL 3632226, at *4 (N.D. Ohio July 31, 2018) (noting that licensed social workers are "other medical sources"). According to SSR 06–03p, an ALJ must still consider opinions and findings from "other sources" and "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-3p, at *6; *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007); *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) (counselor was an "other source," whose opinion was entitled to consideration). The Sixth Circuit interpreted this ruling to mean that an ALJ should discuss the 20 C.F.R. § 404.1527(c) factors relating to treatment, in order to provide a basis for why the ALJ was rejecting the opinion. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378 (6th Cir. 2013) ("The factors set forth in 20 C.F.R. § 404.1527, which under the regulation apply only to medical opinions from acceptable medical sources, nevertheless 'represent basic principles that apply to the consideration of all opinions from medical sources ... who have seen the individual in their professional capacity.'") (citing SSR 06-3p). However, as previously stated, an ALJ does not need to provide "good reasons" for rejecting the opinions of any source that is not a treating physician. *See* 20 C.F.R. § 404.1527(c)(2) ("good reasons" are only required when an ALJ provides less than controlling weight to a treating source's medical opinion); *see also Handzel v. Comm'r of Soc. Sec.*, No. 1:13-CV-01779, 2014 WL 2611858, at *4-5 (N.D. Ohio June 11, 2014) (noting that ALJs are not required to give "good reasons" for rejecting the opinions of nonacceptable medical sources under the regulations).

In the instant case, the ALJ explained that he afforded "little weight" to the medical source statements because "their opinions are not supported by the claimant's more recent medical records, which demonstrate progress." Tr. at 20 (citing tr. at 598-639, 673-718). The ALJ also stated that "their findings are inconsistent with the facts that the claimant has

received conservative treatment without requiring any intensive or inpatient care." *Id.* (citing *id.*). Thus, the ALJ's discussion shows that he considered and evaluated these opinions pursuant to the regulations, particularly by considering the factors of "supportability," "consistency," and the "nature and extent of the treatment relationship." 20 C.F.R. § 404.1527(c)(2)(ii), (c)(3), & (c)(4).

Plaintiff argues that the ALJ did not provide "good reasons" because (a) the opinions were well supported and consistent with other evidence in the record and (b) the ALJ erred in concluding Plaintiff only had conservative treatment and that this did not support rejecting these opinions. ECF Dkt. #15 at 13-15. Although the "good reasons" rule is inapplicable, the ALJ nevertheless gave an adequate discussion of his reasoning. First, conservative treatment is a factor that the ALJ can consider when determining the weight to give to a medical opinion. *Lester v. Soc. Sec. Admin*, 596 Fed.Appx. 387, 389 (6th Cir. 2015). Second, the Plaintiff points to medical records of her diagnoses and symptoms, as well as her subjective testimony, to show that the medical records are supportive and consistent with the opinions of Mr. Leigh and Drs. DeMott and Nagle-Yang. ECF Dkt. #15 at 13-15. In contrast, the exhibits the ALJ cited show many normal findings. *See* tr. at 20, 608-09, 623-24, 636-37, 685-86, 699-701, 704. Even Dr. Nagle-Yang's own treatment notes from October 2015 report mostly normal findings upon examination, except for depressed and irritable mood and affect. *See id.* at 710-14. Dr. DeMott similarly reported many normal findings upon examination, dated August 30, 2017, except for a sad affect and dysthymic mood. *Id.* at 680-85. Records from other physicians also show normal findings upon examination, including full or stable affect and mood. *See id.* at 608-09, 612-13, 623-24, 636-37, 699-701.

The treatment records also include Plaintiff's subjective symptoms that she reported during her visits. She reported anxiety related to past trauma to Mr. Leigh in July 2015. Tr. at 298, 308, 642. Dr. Nagle-Yang saw Plaintiff on October 26, 2015, making the following remarks about Plaintiff's reported condition: pregnant; upset, stating Dr. Nagle-Yang filled out her "ability to participate form" incorrectly for ODJFS, resulting in her being denied an extension of her benefits; PTSD symptoms of hypervigilance, nightmares, flashbacks;

irritable, easily provoked; negative world view and difficulty trusting others. *Id.* at 710. On August 8, 2016, Plaintiff reported again to Dr. Nagle-Yang with the following remarks: 6 months postpartum with history of PTSD and Generalized Anxiety Disorder; Plaintiff reported she was not on medications due to safety concerns in pregnancy and breastfeeding; mood is "all over the place"; feeling irritable, anxious, depressed, overwhelmed by every task; Dr. Nagle-Yang observed mildly irritable mood and constricted affect. *Id.* at 704. During a May 15, 2017 visit to Dr. Tolani, the treatment notes remarked the following complaints: nightmares every night; depressed mood with feelings of helplessness, worthlessness, guilt; poor sleep, lack of energy, low motivation and difficulty concentrating; manic bipolar symptoms; flashback a few times per week; panic attacks triggered by anything that reminds her of her past abuse. *Id.* at 610. On July 10, 2017, Dr. Collins noted the following: lower mood; feeling more depressed and stressed lately, maybe due to recent move to a new home; poor sleep, frequent nightmares; denies mania symptoms; hears garbled noises; near daily migraine headaches; increased appetite and weight gain. *Id.* at 638. On August 5, 2017, Dr. Tolani remarked the following: improvement with anxiety with medication; mild improvement in mood with medication; less frequent feelings of helplessness, hopelessness, worthlessness, guilt; sleep is "up and down"; increased appetite; nightmares every now and then; flashbacks a few times a week; no recent panic attacks. *Id.* at 625. On August 30, 2017, Dr. DeMott reported the following: daily panic attacks, often brought about by seeing daughter who is product of sexual assault; nightmares less intense since being on medication; less lethargic during day since taking medication. *Id.* at 684. Most recently, on September 1, 2017, Plaintiff was counseled on whether to discuss her rape that led to her daughter's birth because her daughter had been asking questions about her father. *Id.* at 688.

The Court recognizes that there are many consistent reports and notes contained within the various treatment notes. However, the records do show that Plaintiff reported some improvement while on medication, as prescribed, particularly in the records dating from August 5, 2017. *See* tr. at 625, 684, 688. Accordingly, the ALJ's finding that Plaintiff's

more recent medical records demonstrate some progress has support in the record, which meets the substantial evidence threshold. Therefore, although the ALJ was not required to give treating physician deference to the opinions of Mr. Leigh, Dr. Nagle-Yang, or Dr. DeMott, the ALJ, nevertheless, adhered to the requirements by discussing the 20 C.F.R. § 404.1527(c) factors so as to provide a basis for why the ALJ rejected these opinions.

Finally, Plaintiff contends that the opinions of the State agency consultants, whose opinions were afforded great weight, were not consistent with the medical evidence and failed to account for additional evidence. ECF Dkt. #15 at 16. Plaintiff further avers that additional evidence of her severe impairment has since been added to the record that discredit these opinions. *Id.* However, her argument assumes that the opinions of Mr. Leigh, Dr. Nagle-Yang, and Dr. DeMott are to be given treating physician status and "appropriate weight." *Id.*

The regulations state that an ALJ is not bound by any findings made by State agency consultants, but ALJs are still required to consider all medical opinions in the record, including from State agency consultants. 20 C.F.R. § 416.927(c) & (e)(2)(i); *see also* 20 C.F.R. § 416.913a(b) (updated version of § 416.927(e), saying the same); *Helm v. Comm'r of Soc. Sec. Admin.*, 405 Fed.Appx. 997, 1002 (6th Cir. 2011) ("There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record. The opinions need only be 'supported by evidence in the case record.'") (citing SSR 96-6p). ALJs "may not ignore the opinions of State agency consultants" because they are highly qualified experts in the evaluation of medical issues in SSA disability claims. SSR 96-6p, at *2. The ALJ must evaluate the State agency findings using the factors in § 416.927(a) through (d) and must explain the weight given to these opinions, unless a treating source's opinion is given controlling weight. 20 C.F.R. § 416.927(e)(2)(ii). In appropriate circumstances, the opinions of State agency consultants "may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, at *3; *see also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016). However, when there is substantial evidence post-dating a State agency consultant's opinion,

the Sixth Circuit "require[s] some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not 'based on a review of a complete case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (citing *Fisk v. Astrue*, 253 Fed.Appx. 580, 585 (6th Cir. 2007) and SSR 96–6p, 1996 WL 374180, at *3); *see also Miller*, 811 F.3d at 834. If an ALJ's decision includes a discussion of medical opinions or other evidence post-dating the State agency opinions, courts will generally find no error as the ALJ adequately reviewed the complete case record. *See Minyard v. Berryhill*, No. 5:17CV2261, 2019 WL 1099552, at *5 (N.D. Ohio Mar. 8, 2019) (Limbert, J.); *Kelly v. Comm'r of Soc. Sec.*, 314 Fed.Appx. 827, 831 (6th Cir. 2009) (finding no error when new evidence is submitted after agency expert opinions that does not "render the prior opinion untenable," or "fatally undermine the accuracy of that assessment."); *Maust v. Colvin*, No. 5:13-CV-02353, 2014 WL 4852064, at *7 (N.D. Ohio Sept. 29, 2014) (rejecting plaintiff's unsupported argument that ALJ erred in crediting State agency opinions when plaintiff failed "to explain how these recent records are inconsistent with the State Agency's consultants' opinions).

Here, the ALJ considered evidence post-dating the State agent examiners' opinion. *See* tr. at 20. For example, and as already discussed, the ALJ considered and examined the opinions of Mr. Leigh and Drs. Nagle-Yang and DeMott as well as "the record as a whole." Plaintiff has the burden to show error and has failed to do so here. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.") (internal citation omitted).

Accordingly, the Court finds that substantial evidence supports the ALJ's treatment of the opinions of Mr. Leigh, Dr. Nagle-Yang, and Dr. DeMott.

**B.**     **ADDITIONAL RFC LIMITATIONS**

Plaintiff asserts that the ALJ erred by failing to assign additional RFC limitations to account for (1) excessive absenteeism due to migraines and (2) stricter limitations regarding her social functioning. ECF Dkt. #15 at 16-19.

At Step Two of the sequential steps for evaluating entitlement to social security benefits, an ALJ considers whether the claimant has a medically determinable physical or mental impairment that is "severe" or a combination of impairments that are "severe." 20 C.F.R. § 404.1520(a)(4)(ii) & (c); 20 C.F.R. § 416.920(a)(4)(ii) & (c). Social Security regulations establish that after this determination at Step Two, the ALJ must consider *all* of the claimant's impairments, both "severe" and "non-severe," at every sequential step in the process, including in the ALJ's determination of RFC. *See* 20 C.F.R. § 404.1520(e), 404.1545, 416.920(e), 416.945, 404.1523(c), 404.1529; SSR 96-8P, 1996 WL 374184, at *5. RFC simply defined is "what an individual can still do despite his or her limitations." S.S.R. 96-8P, 1996 WL 374184, at *2 (1996); *see also* 20 C.F.R. § 404.1545(a)(1). An ALJ must consider all of a claimant's impairments and symptoms and the extent to which they are consistent with the objective medical evidence. 20 C.F.R. § 404.1545(a)(2)(3). The claimant bears the responsibility of providing the evidence used to make a RFC finding. 20 C.F.R. § 404.1545(a)(3). However, the RFC determination is one reserved for the ALJ. 20 C.F.R. § 404.1546(c); *Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician."); SSR 96-5p, 1996 WL 374183, at *5. Social Security Ruling ("SSR") 96-8p provides guidance on assessing RFC in social security cases. SSR 96-8p. The Ruling states that the RFC assessment must identify the claimant's functional limitations and restrictions and assess her work-related abilities on a function-by-function basis. *Id*. Further, it states that the RFC assessment must be based on *all* of the relevant evidence in the record, including medical history, medical signs and lab findings, the effects of treatment, daily living activity reports, lay evidence, recorded observations, effects of symptoms, evidence from work attempts, the need for a structured living environment and work evaluations. *Id*.

In his decision, the ALJ at Step Two found that migraines were one of Plaintiff's severe impairments. Tr. at 14. In his RFC discussion, the ALJ referred to Plaintiff's history of migraine headaches as a physical impairment. *Id.* at 17-18 (citing tr. at 341-448, 463-537, 540-96). The ALJ considered Plaintiff's subjective testimony and complaints regarding her migraines, specifically mentioning the following:

> As for her physical impairment, the claimant stated that she experiences migraines three to four days each week, which last all day. She rated her migraine pain with medication as a 7 on a scale of 1 to 10 with 10 being the most severe. Without medication, she noted that her pain is at a 10 on the same pain scale.

Tr. at 17; *see also* tr. at 45-46. However, the ALJ found that her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id.* at 17. The ALJ later explained that while Plaintiff reported that her headaches were ongoing, she also stated that they were stable. *Id.* (citing tr. at 370, 385, 391, 465). He also noted that Plaintiff received an EEG in November 2015, which revealed normal findings. *Id.* (citing tr. at 465). The ALJ further mentioned that she denied having headaches during a July 17, 2017 examination. *Id.* (citing tr. at 656). Further, the ALJ afforded great weight to the opinion of Dr. Sreenvas, a State agency medical consultant, because it was consistent with Plaintiff's medical history, especially noting her chronic migraine headaches. *Id.* at 20 (citing tr. at 370, 385, 391, 465). The ALJ expressly stated that he "has also included an additional limitation of working in a loud noise environment, in consideration of the claimant's statements at [the] hearing." *Id.* (citing tr. at 29-66); *see also id.* at 16. Therefore, Plaintiff's assertion that it was "not clear from the record what limitations, if any, the ALJ included based upon the migraines," is without merit. *See* ECF Dkt. #15 at 18.

Plaintiff's other contention is that her migraines would cause her to miss work at a minimum eight times a month. ECF Dkt. #15 at 17. She noted, that the VE testified that being off task 20 percent of an eight-hour work shift and/or missing two days of work per month would make a person not competitive or productive enough to work. *Id.* at 17-18 (citing tr. at 62-63). The VE noted that the Department of Labor does not address either

being off task or absenteeism, but that he based his opinion on his training, education, and experience. Tr. at 63.

When faced with a substantially similar issue, the Southern District of Ohio found that an ALJ specifically considered plaintiff's severe impairment of migraines and sufficiently accounted for limitations related to that condition. *Moore v. Comm'r of Soc. Sec.*, No. 2:17CV0144, 2018 WL 1477233, at *10 (S.D. Ohio Mar. 27, 2018). In *Moore*, the ALJ considered migraines to be a severe impairment at Step Two, but concluded at Step Three that it did not meet or equal a listed impairment. *Id.* at *9. The ALJ considered the evidence, including her persistent complaints of headaches as well as examinations, including a MRA, that revealed generally normal findings. *Id.* at *10. That ALJ afforded several RFC limitations, none of which included being off task or excessively absent. *Id.* In response to plaintiff's argument "that the ALJ's finding that migraine headache was a severe impairment is inconsistent with his RFC that does not contain any migraine-related limitations," the court disagreed, stating:

> Even if these limitations are unrelated to Plaintiff's severe impairment of migraine, it is not necessarily inconsistent to recognize migraine as a severe impairment and to articulate a RFC that does not contain any migraine-related limitations.

*Id.* at *10-11 (internal citations omitted). The instant case presents an even stronger case than in *Moore* because the ALJ actually did include certain migraine-related limitations in his RFC determination. *See* tr. at 16, 18. The ALJ also adequately considered all the relevant evidence about Plaintiff's migraines. *See* tr. at 16-20. Therefore, the Court finds that the ALJ's RFC determination, particularly with regard to her migraines, was supported by substantial evidence.

Next, Plaintiff alleges that the RFC should have included stricter social functioning limitations. ECF Dkt. #15 at 18-19. She specifically takes issue with the RFC limitation that "she is capable of frequent interaction with supervisors and occasional interaction with coworkers and the public." ECF Dkt. #15 at 18; Tr. at 16. For support, she cites to one page

of her medical records as well as to the opinions of Mr. Leigh, Dr. Nagle-Yang, Dr. DeMott, and Dr. Konieczny. *Id.* at 18.

As previously discussed, the opinions of Mr. Leigh and Drs. Nagle-Yang and DeMott were adequately afforded little weight. To note, however, Mr. Leigh and Dr. Nagle-Yang opined that Plaintiff could occasionally deal with the public, relate to co-workers, interact with supervisors, and socialize. Tr. at 538-39 ("occasional" defined as the "ability for activity exists for up to 1/3 of a work day"). Dr. DeMott opined that Plaintiff had moderate limitations cooperating with others and marked limitations in handling conflicts with others, but he also found no limitation in the areas of: stating own point of view; initiate or sustain conversation; understand and respond to social cues (physical, verbal, emotional); respond to requests, suggestions, criticism, correction, and challenges; and keep social interactions free of excessive irritability, sensitivity, argumentativeness or suspiciousness. *Id.* at 649-50. Although these opinions were only given little weight, they do not necessarily contradict the ALJ's RFC limitation.

The ALJ also discussed the opinion of consultative examiner, Dr. Konieczny, and afforded great weight to his opinion. Tr. at 18, 21. The ALJ noted that Plaintiff met with Dr. Konieczny on October 15, 2015 for a mental status examination, which revealed the following: normal flow of conversation; maintained appropriate eye contact; appeared oriented; ability to concentrate and attend to tasks showed moderate impairment; insight was fair and she only had mild deficits in judgment. *Id.* at 18 (citing tr. at 449-54). Dr. Konieczny's diagnostic impressions included PTSD and other specific depressive disorder, depressive episodes with insufficient symptoms. *Id.* at 18, (citing Tr. at 453). In his reasons for affording great weight to this opinion, the ALJ specifically noted Dr. Konieczny's findings that:

> claimant has no obvious limitations in understanding, remembering and carrying out instructions, as well as, maintaining concentration and pace. Yet, he determined that the claimant would have diminished tolerance for frustration and coping skills, which would limit her ability to respond to typical supervision, interpersonal situations, and pressure situations, in a work setting.

*Id.* at 21 (citing tr. at 449-54). The ALJ "found additional moderate limitations in understanding, remembering and applying information, as well as, in her ability to maintain concentration and persistence, due to Dr. Konieczny's examination of the claimant's sensorium and cognitive functioning." *Id.* (citing tr. at 452). Subsequently, the ALJ expressly "includ[ed] these limitations upon considering the claimant's most recent treatment. *Id.* (citing tr. at 598-639, 673-718).

In addition, the ALJ gave great weight to the opinions of State agency psychological consultants, Ermias Seleshi, M.D. and Kathleen Malloy, Ph.D. Tr. at 20. Notably, they opined that Plaintiff's diminished frustration tolerance and coping skills would impact her ability to respond to typical supervision and interpersonal situations, as well as, respond to typical work pressures in a work setting, and she could interact with coworkers and supervisors on a superficial basis and occasionally interact with the general public. *Id.* (citing 79-90, 106-118). Again, this supports the ALJ decision to afford a somewhat mild social functioning limitation. Tr. at 16.

Further, at the October 13, 2017 hearing, the ALJ presented several hypothetical questions to the VE, including a stricter social functioning limitation: occasional interaction with supervisors and co-workers and no interaction with the public. Tr. at 61-62. The VE nevertheless testified that there are jobs with such a stricter social functioning limitation. *Id.* at 62. Therefore, Plaintiff has not shown how she was harmed by the ALJ's social functioning limitation. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

For the above reasons, the Court finds that the ALJ applied the proper legal standards in evaluating Plaintiff's symptoms and resulting limitations. The Court further finds that the ALJ set forth sufficient reasons for the determinations that he made and substantial evidence supports those determinations.

## VI.    CONCLUSION

For the above reasons, the Court orders that the decision of the ALJ is hereby AFFIRMED and Plaintiff's complaint is hereby DISMISSED in its entirety WITH PREJUDICE.


Date: August 30, 2019                    _____/s/George J. Limbert_____
                                         GEORGE J. LIMBERT
                                         UNITED STATES MAGISTRATE JUDGE